IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| **CLARENCE ROULHAC, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. **3:10CV408–HEH** |
| | ) | |
| **PRISON HEALTH SERVICES,** | ) | |
| **INC.,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION
(Granting Schilling's Motion to Dismiss; Granting PHS's Motion to Dismiss;
Denying Janek's Motion to Dismiss)

Clarence Roulhac, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. The action is proceeding on Roulhac's Complaint (Dk. No. 1), wherein he alleges that his rights under the Eighth Amendment[1] were violated by Fred Schillings, Linda Ray, A. Toney, L. Kump, B.S. Janek and Prison Health Services, Inc. ("PHS") while Plaintiff was confined in the Powhatan Correctional Center ("PCC").[2] This matter is before the Court on a Motion to Dismiss from Schilling (Dk. No. 32), a Motion to Dismiss from Defendants PHS, Ray, Toney, and Kump ("PHS's Motion to Dismiss") (Dk. No. 25), and a Motion to Dismiss from Janek (Dk. No. 36). Roulhac has not responded. This matter is ripe for judgment.

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[2] Schillings is the Health Services Director for the Virginia Department of Corrections, Ray is the Head Nurse at PCC, and Toney is the Medical Director at PCC. Kump and Janek are medical providers employed by PHS who provided treatment to Roulhac at PCC during the time period in question.

## I. STANDARD OF REVIEW FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (second alteration in original). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him [or her] to relief." *Conley*, 355 U.S. at 45-46. In *Bell Atlantic Corp.*, the Supreme Court noted that the complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one

that is "plausible on its face," *id.* at 570, rather than "conceivable." *Id.* Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS

On May 15, 2009, Roulhac was hit in the mouth while playing softball. (Compl. 7.)[3] Roulhac went to PCC's medical facility and was transported to MCV[4] about one hour later. (*Id.* at 7–8.) Surgery was performed on Roulhac's mouth during which two teeth were extracted and some bone removed. (*Id.* at 8.) Roulhac also

---

[3] Because Roulhac has not consistently numbered his Complaint (Dk. No. 1), the Court will utilize the page numbers assigned to that document by the Court's CM/ECF system.

[4] "MCV" refers, in this case, to the Medical College of Virginia's hospital in Richmond, Virginia. This hospital is, at present, properly referred to as VCU-HS (Virginia Commonwealth University Health Systems) while the moniker "MCV" is reserved exclusively for references to the medical school itself. However, because all parties here refer to it as such, for the remainder of this Memorandum Opinion the Court will refer to VCU-HS as MCV.

received stiches in his gum and on both the inside and outside of his bottom lip. (*Id.*) Roulhac was then returned to PCC with medication and instructions from the MCV surgeon. (*Id.*)

On May 17, 2009, a nurse informed Roulhac that he would be seeing Defendant Kump, the PCC physician employed by PHS, the next day "because of my high blood pressure from the Jan./Feb. physical examination." (Compl. Ex. L (Dk. No. 1-13).) The next day, May 18, 2009, Roulhac saw Defendant Kump and asked her about his high blood pressure. (Compl. Ex. M (Dk. No. 1-14); Compl. 8.) Kump professed to have no knowledge of the problem and did not investigate further or prescribe any treatment.[5] (Compl. 8.) Kump then proceeded to change Roulhac's bandages. (*Id.*) This was the first time Roulhac's bandages had been changed since returning from MCV. (*Id.*) Roulhac's mouth was swollen and "[t]here was a foul odor and pus (fungus) drainage." (*Id.*) Roulhac admits that he was instructed to use medication given to him at MCV to keep the site clean "which plaintiff never used." (*Id.*)

The next day, May 19, 2009, Roulhac went to Medical at PCC and complained that there was "a fungus (pus) on the stitches under the outside of plaintiff's bottom lip, and the injury is not healing properly, plus there is a foul odor." (*Id.* at 8–9.) The nurse

---

[5] Roulhac's Complaint includes the readings from several blood pressure tests he had over the time period in question. (Compl. 8.) Roulhac states that he was "never notified or treated for his high blood pressure until nine (9) months after 'PHS' had knowledge of it. When medication was prescribed plaintiff's blood pressure and cholesterol 'were not' momitored [sic] or checked periodically." (*Id.* at 11.) As best as this court can ascertain, *see Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("District judges are not mind readers."), this is an Eight Amendment claim against Defendants PHS and Kump for not properly treating Roulhac's high blood pressure.

gave Roulhac gauze and band-aids but did not change his bandage. (*Id.* at 9.) The band-aids would not stick to the surgery site because of the "pus drainage." (*Id.*) Roulhac's bandages were not changed again until May 23, 2009 when he reported for his last dose of medication. (*Id.*) At that time, a nurse saw him and realized that the surgery site was infected. (*Id.*) Roulhac was transported to MCV for treatment and underwent another surgery during which the site was cleaned of infection and re-stitched. (*Id.*) However, because the infection "ate a hole under plaintiff's bottom lip," Roulhac's bottom lip was stitched to his gum in order for the site to heal properly. (*Id.*) The surgeon at MCV informed Roulhac that the staff at PCC had failed to follow the prior instructions to change the dressing on his wound at least once a day. (*Id.*)

On November 2, 2009, approximately six months later, Roulhac saw Janek to have a tooth extracted as a result of the May 15, 2009 injury.[6] (*Id.* at 10.) Janek was employed by PHS and serving as a dentist at PCC. (*Id.*) Roulhac reported sensitivity in his lip and gum as well as soreness in his mouth from eating. (*Id.*) Janek told Roulhac that "'there is to [sic] much nerve in your lip and gum, by your lip being stitched to the gum.'" (*Id.*) Janek stated that Roulhac needed reconstructive surgery to repair his bottom lip and asked if Roulhac had enough time left on his sentence to get dentures.[7] (*Id.* at 11.) Janek then told Roulhac that "'he would wait a month for plaintiff's mouth to

---

[6] The Court notes that Roulhac had only three teeth in his mouth prior to the November 2, 2009 extraction. (Compl. Ex. M.)

[7] Janek indicated that Roulhac would need a year or more left on his sentence to qualify for dentures. (Compl. 11.)

5

completely heal.'" (*Id.*) Approximately six months later, as of the filing of the Complaint, Roulhac had not been scheduled for surgery. (*Id.*)

Based on the foregoing allegations, Roulhac makes the following claims for relief:

Claim 1    Roulhac was denied adequate medical care following his mouth injury by:
    (a)    Defendant Schillings;
    (b)    Defendant Ray;
    (c)    Defendant Toney;
    (d)    Defendant Kump; and
    (e)    Defendant PHS.

Claim 2    Roulhac was denied adequate medical care by
    (a)    Defendant Kump and
    (b)    Defendant PHS
when his high blood pressure was not promptly treated.

Claim 3    Roulhac was denied adequate medical care by
    (a)    Defendant Janek and
    (b)    Defendant PHS
when it was determined that he needed reconstructive surgery and dentures and no surgery was ever scheduled.

(Compl. 7–11.) Roulhac seeks $500,000 in damages from each defendant. Roulhac also seeks injunctive relief in the form of an order requiring Defendants to provide him with "adequate medical and dental care for plaintiff's injury (lip, gum, and dentures (teeth top and bottom))." (Compl. 12.) Defendants PHS, Ray, Lump, Toney, and Janek have moved to dismiss the claims against them on the grounds that, *inter alia*, Roulhac's complaint fails to state a claim under 42 U.S.C. § 1983 or a violation of the Eighth Amendment. Defendant Schilling has moved to dismiss the claims against him on the

6

ground that Roulhac has not demonstrated that he personally violated Roulhac's Eighth Amendment rights.

### III. ANALYSIS

#### A. Supervisory Defendants

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege facts that indicate a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). The indulgence shown to *pro se* litigants does not relieve them of the obligation to provide each defendant with fair notice of the facts upon which his or her liability rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (citing *Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968)).

Roulhac fails to mention Defendants Schilling, Ray, and Toney in the body of the complaint, much less allege, as he must, how they participated in any violation of his rights. It appears to the Court that the only reason Schilling, Ray, and Toney have been named is because they were acting in a supervisory capacity over other defendants. However, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must

7

plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* is inapplicable to § 1983 actions). Accordingly, Claims 1(a), 1(b), and 1(c) will be DISMISSED.

B.  **Corporate Defendant**

When Congress enacted 42 U.S.C. § 1983, it did not intend to impose liability upon a corporation every time one of its employees violated a person's constitutional rights.[8] *See Burton v. Youth Servs. Int'l, Inc.*, 176 F.R.D. 517, 520 (D. Md. 1997) (citing cases). Rather, a private corporation, such as PHS, "is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citing cases).[9]

> A policy or custom for which a [corporation] may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

---

[8] The Court recognizes that Defendant PHS has not specifically addressed its status as a corporate defendant or the fact that Roulhac makes no specific allegations against it. Nevertheless, the Court has the power to dismiss Plaintiff's claims *sua sponte* if they are frivolous or fail to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B).

[9] The principles of municipal liability for cases under 42 U.S.C. § 1983 are equally applicable to private corporations that are deemed to act under color of state law in providing particular services. *See Austin*, 195 F.3d at 727–29.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (second alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). Here, Roulhac has made no effort, as he must, "to identify the offending [corporate] policy [or custom] with precision." *Carter*, 164 F.3d at 218. In fact, Roulhac, other than identifying various persons as PHS employees, has not mentioned PHS in the body of his complaint. Accordingly, Claims 1(e), 2(b), and 3(b) will be DISMISSED.

C.  **Roulhac's Eighth Amendment Claim Against Kump**

To make out an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts that suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

The subjective prong of a deliberate indifference claim requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06).

10

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997)). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2). In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### 1. Deliberate Indifference to Roulhac's Mouth Wound

Here, Roulhac has not presented facts sufficient to support a claim of deliberate indifference against Defendant Kump in regards to his mouth wound. Roulhac has put forth sufficient facts to raise a reasonable inference that his wound was objectively serious since it required two surgeries. (Compl. 8, 9.) However, Roulhac fails to allege facts to raise an inference that Kump acted with deliberate indifference. *See Farmer*, 511 U.S. at 837. Roulhac admits that Kump changed his bandages on May, 18, 2009, the third day following his surgery. Though Roulhac states that his bandages were not changed on any other day he fails to state that this was due to Kump's indifference or that Kump was even aware that the bandages were not changed. All of Roulhac's other interactions were with nurses "at the window" who are not named as defendants in the Complaint. (*See* Compl. 8–9.) Thus, Roulhac has failed to raise a reasonable inference that Kump had even "general knowledge" that his wound was not being cared for correctly much less that she "dr[e]w the inference between those general facts and the specific risk of harm confronting [him]." *Johnson*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837). Accordingly, Claim 1(d) will be DISMISSED.

### 2. Deliberate Indifference to Roulhac's High Blood Pressure

Where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must allege facts that suggest "'that the delay resulted in substantial harm.'" *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 n.13 (4th Cir. 2008) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)); *see Smith v. FCM-*

*MTC Med., LLC.*, 3:10CV352, 2011 WL 1085975, at *9 (E.D. Va. Mar. 21, 2011). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing cases). Roulhac has failed to allege any facts that indicate he was substantially harmed by the delay in the provision of high blood pressure medication. *Abron v. Clerk of Court*, No. 10–1632, 2011 WL 4006602, at *5 (E.D. La. Aug. 5, 2011) (holding that delay in providing blood pressure medication does not rise to an Eighth Amendment violation unless there has been substantial harm to plaintiff (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)); see *Williams v. Dallas Cnty.*, No. 3–01–CV–0400–D, 2003 WL 21662823, at *4 (N.D. Tex. July 14, 2003) (eight-week delay in receiving blood pressure medication is not deliberate indifference); *see also Haden v. Green*, No. 10-cv-00515-PAB-KMT, 2011 WL 1085328, at *5 (D. Colo. Jan. 12, 2011) (concluding anxiety attacks as the result of a delay in the provision of medication did not satisfy substantial harm requirement). Accordingly, Claim 2(a) will be DISMISSED.

### D. Roulhac's Eighth Amendment Claim Against Janek

Roulhac's claims against Defendant Janek, when read in the light most favorable to him, are sufficient to establish his right to relief beyond the merely conceivable level. At its core, Roulhac's claim against Janek is for deliberate indifference due to the denial of a medical device, to wit: dentures. The allegations, taken as true, demonstrate that Roulhac received a significant injury to his mouth that required two surgeries and resulted in his bottom lip being stitched to his gum. (Compl. 9.) This caused pain and

sensitivity in Roulhac's mouth that made it uncomfortable for him to eat. (*Id.* at 10.) Approximately six months after the injury occurred, Janek recommended reconstructive oral surgery in anticipation of making dentures to alleviate Roulhac's discomfort. (*Id.* at 11.) Janek told Roulhac that he would have to wait another month for the wound site to completely heal before scheduling surgery. (*Id.*) Thereafter, Janek failed to schedule the reconstructive surgery and, thus, the dentures were never made and Roulhac's pain was never alleviated. (*Id.*)

The denial of a medical device, such as dentures, may be sufficient to state a claim for a serious medical need if the plaintiff making such a claim alleges pain, severe discomfort, or other adverse medical consequences. *Ryan v. Whitehead*, No. RWT–09–1702, 2010 WL 2816976, at *3 (D. Md. July 16, 2010) (citing *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). Here, Roulhac has alleged that the delay in providing dentures resulted in a "burning/stinging sensation in plaintiff's lip and gum" and soreness when he eats. (Compl. 10–11.) Thus, the complaint fairly supports an inference that, by denying him dentures, Janek was deliberately indifferent to Roulhac's serious medical need. The Court can also reasonably infer deliberate indifference on Janek's part from his recognition that Roulhac needed oral surgery coupled with his failure to schedule that surgery. *See Creech v. Nguyen*, No. 97–6925, 1998 WL 486354, at *7 (4th Cir. Aug. 7, 1998). For the foregoing reasons Defendant Janek's motion to dismiss will be DENIED.

## IV. CONCLUSION

Defendant Shilling's Motion to Dismiss will be GRANTED; the Motion to Dismiss of Defendants PHS, Ray, Toney, will be GRANTED; and Defendant Janek's Motion to Dismiss will be DENIED. Roulhac's Claims 1(a)–(e), 2(a)–(b), and 3(b) will be DISMISSED WITH PREJUDICE.

An appropriate Order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Dec 23, 2011
Richmond, Virginia

15