IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CLARENCE ROULHAC, JR., )
)
    Plaintiff, )
v. )   Civil Action No. 3:10CV408–HEH
)
PRISON HEALTH SERVICES, )
INC., *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION
### (Granting Defendant's Motion for Summary Judgment)

Clarence Roulhac, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. This matter is now before the Court on Dr. Janek's Motion for Summary Judgment. (Dk. No. 74.) Roulhac has not responded. The matter is ripe for judgment. Based on the following, Dr. Janek's Motion for Summary Judgment will be granted.

## I. PROCEDURAL HISTORY

In his Complaint,[1] Roulhac alleged that, while incarcerated at Powhatan Correctional Center ("PCC"), Defendants[2] violated his Eighth Amendment[3] right to adequate medical care. On December 23, 2011, by Memorandum Opinion and Order, the

---

[1] Because Roulhac has not consistently numbered his Complaint (Dk. No. 1), the Court will utilize the page numbers assigned to that document by the Court's CM/ECF system.

[2] The Complaint named Prison Health Services ("PHS"), Linda Ray, Dr. L. Kump, Dr. A. Toney, Dr. B.S. Janek, and Dr. Fred Shillings as defendants.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Court granted Motions to Dismiss from PHS, Ms. Ray, Dr. Kump, Dr. Toney, and Dr. Schilling, dismissed Roulhac's claims against those defendants, and directed the Clerk to terminate them as defendants. *Roulhac v. Prison Health Servs., Inc.*, No. 3:10CV408–HEH, 2011 WL 6750559, at *6 (E.D. Va. Dec. 23, 2011).

The December 23, 2011 Memorandum Opinion also denied Dr. Janek's Motion to Dismiss, leaving him as the only remaining defendant.[4] Accordingly, the only claim remaining before the Court is Roulhac's Claim Three (a) against Dr. Janek for denial of adequate dental care, to wit:

> Claim Three (a)  Dr. Janek denied Roulhac adequate medical care by failing to schedule reconstructive surgery and/or an evaluation for dentures.

Roulhac seeks $500,000 in damages and injunctive relief in the form of an order requiring prison officials to provide him with "adequate medical and dental care for plaintiff's injury (lip, gum, and dentures (teeth top and bottom))." (Compl. 12.)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will

---

[4] At all times relevant to this matter, Dr. Janek served as the dentist at PCC.

2

bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).

When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

Defendant supported the Motion for Summary Judgment with his own affidavit (Mem. Supp. Mot. Summ. J. Ex. A ("Janek Aff.")), Roulhac's medical records (Janek Aff. Ex. 1 ("Med. R.")), and a copy of Virginia Department of Corrections Operating Procedure 720.6 (Janek Aff. Ex. 2 ("Operating Procedure 720.6")). Roulhac has not responded to Defendant's Motion for Summary Judgment. Rather, he rests upon his unsworn Complaint.

3

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence, rather than relying on his complaint. *Celotex Corp.*, 477 U.S. at 324. Dr. Janek's Motion for Summary Judgment contains a statement of undisputed facts as required by Local Rule 56(B).[5] In accordance with Local Rule 56(B), because Roulhac failed to oppose Dr. Janek's Motion for Summary Judgment, the Court presumes that Roulhac admits the facts listed in the statement of undisputed facts (Mem. Supp. Mot. Summ. J. 2–8). E.D. Va. Loc. Civ. R. 56(B).

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment.

### III. SUMMARY OF PERTINENT FACTS

Dr. Janek began treating Roulhac in 2004. (Janek Aff. ¶ 5.) Between April of 2004 and July of 2006, Dr. Janek saw Roulhac on two occasions, each initiated by Roulhac's submission of an inmate request form for dental services. During these two appointments, Roulhac requested tooth removal due to pain and discomfort. Dr. Janek

---

[5] Local Rule 56(B) provides:

> Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. *In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.*

E.D. Va. Loc. Civ. R. 56(B) (emphasis added).

4

removed those teeth he deemed "peridontally hopeless" and proscribed Motrin to relieve Roulhac's pain. (*Id.* ¶¶ 5–6.)

On July 24, 2006, Dr. Janek examined Roulhac for a third time. During this appointment, Janek "developed a treatment plan" that included, *inter alia*, additional tooth extractions and "possibly fitting [Roulhac] for a full upper denture and a partial lower denture in the future." (*Id.* at ¶ 7.) Pursuant to the treatment plan, Dr. Janek twice treated Roulhac in 2007. Roulhac initiated each treatment by submitting an inmate request form for dental services.

"The next time [Dr. Janek] saw [Roulhac] was in May 2009." (*Id.* ¶ 9.) On May 15, 2009, Roulhac injured himself while playing sports, resulting in a laceration inside of his mouth.[6] (*Id.*) PCC officials transported Roulhac to the hospital associated with the Medical College of Virginia in Richmond ("MCV"). (*Id.*) Doctors at MCV diagnosed Roulhac with a fracture in his lower jaw. MCV doctors stitched the laceration in Roulhac's mouth, extracted two teeth, and removed some bone from his lower jaw. (*Id.*)

On May 23, 2009, the PCC facility physician, suspecting an infection in Roulhac's mouth wound, ordered PCC staff to transport Roulhac to MCV for evaluation. (*Id.* ¶ 12.) Roulhac returned from MCV on May 24, 2009.[7] (*Id.*) On May 26, 2009, Dr. Janek

---

[6] In his Complaint, Roulhac claims that a softball or baseball hit him in the mouth. (Compl. 7.) Dr. Janek asserts that Roulhac's medical and dental records conflict as to the cause of Roulhac's injury, to wit: Roulhac may have injured his mouth playing basketball. (Janek Aff. ¶¶ 9, 9 n.2.) The exact circumstances of Roulhac's injury are immaterial to the instant motion.

[7] In his unsworn Complaint, Roulhac states that, during his second stay at MCV, he underwent another surgery during which doctors cleaned the wound site of infection and

evaluated Roulhac's wound site and referred Roulhac to PCC Medical for a change of dressing. (*Id.* ¶ 13.) "Thereafter, [Roulhac] continued to have wound care and dressing changes in the medical department for his injury." (*Id.*)

On June 15, 2009, PCC Medical referred Roulhac to the dental department for removal of his stitches. (*Id.* ¶ 14.) On June 25, 2009, Dr. Janek examined Roulhac and removed the stiches placed by the doctors at MCV. (*Id.*) During that examination, Roulhac requested that Dr. Janek remove one of Roulhac's remaining teeth. (*Id.*) Dr. Janek advised Roulhac to submit an inmate request form for dental services, at which time the dental staff would place Roulhac on the waiting list for treatment. (*Id.*)

On November 2, 2009, pursuant to a July 3, 2009 request for dental services (*id.* ¶ 15), Dr. Janek again examined Roulhac (*id.* ¶ 16). Per Roulhac's request, Dr. Janek extracted another tooth.[8] (*Id.*)

> On this date, [Roulhac] also complained to [Dr. Janek] for the first time of sensitive scar tissue that had formed as a result of his injury in May 2009. [Dr. Janek] noted that [Roulhac's] vestibule area[9] of teeth #20–23 had been shorten [sic] by the suture attachments previously placed at MCV because of the bone loss after the traumatic injury to [Roulhac's] face and mouth. [Dr. Janek] examined [Roulhac] and explained to him that he may want to be considered for evaluation for vestibuloplasty, but that he could not be evaluated for this procedure for other [sic] 2–3 months because he needed

---

replaced the stiches in his lip. (Compl. 9.) However, because the infection "ate a hole under plaintiff's bottom lip," the doctors stitched Roulhac's bottom lip to his gum so that the site would heal properly. (*Id.*)

[8] Roulhac states that, prior to the November 2, 2009 extraction, "I only [had] 3 teeth in my mouth and they are at the bottom, none at the top." (Compl. Ex. M.)

[9] The vestibule of [the] mouth is the space between the lips (or cheeks) and teeth.

time for his mouth to heal from the extraction and injury.[10] Accordingly, and per [Operating Procedure] 720.6, [Dr. Janek] advised [Roulhac] to submit an Inmate Request Form in 2–3 months requesting to be evaluated.

(*Id.* (internal footnote numbers changed).)

"It is the responsibility of the offender to request dental care by using the appropriate request form." Operating Procedure 720.6(IV)(D). Roulhac does not dispute that, after the November 2, 2009 examination:

> At no time did [Roulhac] submit an Offender Request Form asking to be seen by the dentist and evaluated for corrective surgery or for the fitting of dentures per his treatment plan.
> . . . .
> In treating [Roulhac], [Dr. Janek] responded to his requests for extractions and directed him to follow procedure in requesting an evaluation for the provision of dentures per his treatment plan and for a possible corrective surgery. [Roulhac] never submitted a request to be evaluated as [Dr. Janek] advised or to continue with a treatment plan . . . .

(Janek Aff. ¶¶ 17, 19.)

## IV. ANALYSIS

### A.   Eighth Amendment Standard

To survive a motion for summary judgment on an Eighth Amendment claim, a plaintiff must demonstrate: (1) that objectively the deprivation suffered or harm inflicted was "'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A medical need is "serious"

---

[10] Vestibuloplasty is a surgical procedure to restore the alveolar ridge height by lowering muscles attaching to the buccal, labial, and lingual aspects of the jaws.

if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question

subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

### B.  Reconstructive Surgery

Roulhac asserts that, because Dr. Janek never scheduled him for reconstructive surgery, Roulhac is unable to get the dentures he needs. (*See* Compl. 11.) However, Dr. Janek's uncontested affidavit indicates that Roulhac's candidacy for vestibuloplasty is separate and distinct from his candidacy for dentures. (*See* Janek Aff. ¶¶ 16, 17, 19.) In other words, nothing requires Roulhac to have reconstructive surgery before he requests

9

dentures. Even so, Dr. Janek avers that because the doctors at MCV removed bone from Roulhac's jaw as a result of his May 15, 2009 injury, Roulhac is "most likely not ... a candidate for vestibuloplasty even had he submitted [an inmate request form requesting evaluation]." (*Id.* ¶ 17.) In any event, states Dr. Janek, per Operating Procedure 720.6, the reconstructive surgery Roulhac desires "is deemed dentally acceptable but not dentally mandatory." (*Id.*)

The Constitution entitles inmates only to those procedures that are medically necessary and does not entitle them to procedures that are merely desirable. *Bowring*, 551 F.2d at 48; *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6). Roulhac fails to either demonstrate that reconstructive surgery is medically necessary or allege exceptional circumstances calling Dr. Janek's affidavit into question. Moreover, Roulhac fails to demonstrate that Dr. Janek subjectively recognized any risk of harm to Roulhac resulting from Dr. Janek's failure to schedule the surgery,[11] much less that Dr. Janek "subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Lee*, 372 F.3d at 303 (quoting *Rich*,

---

[11] Furthermore, Roulhac does not dispute that Dr. Janek instructed him to submit an inmate request form for surgical evaluation "2–3 months" after Roulhac's November 2, 2009 dental visit or that Roulhac failed to submit such a request. (Janek Aff. ¶¶ 16-17.) Thus, this lapse by Roulhac, rather than any indifference by Dr. Janek, prevented Roulhac's evaluation for surgery.

129 F.3d at 340 n.2). Accordingly, to the extent that it addresses Roulhac's desire for reconstructive surgery, Dr. Janek's Motion for Summary Judgment will be granted.

### C. Dentures

"At its core, Roulhac's claim against Janek is for deliberate indifference due to the denial of a medical device, to wit: dentures." *Roulhac v. Prison Health Servs., Inc.*, No. 3:10CV408–HEH, 2011 WL 6750559, at *6 (E.D. Va. Dec. 23, 2011). "[T]here is ample authority recognizing that the failure to provide comparable basic corrective/medical devices [including dentures] may amount to deliberate indifference to a serious medical need." *Large v. Wash. Cnty. Det. Ctr.*, No. 90-6610, 1990 WL 153978, at *1 (4th Cir. Oct. 16, 1990) (citing cases). However, nothing in the record indicates that Dr. Janek bears responsibility for Roulhac's lack of dentures.

Operating Procedure 720.6 requires inmates to initiate dental procedures by submitting "the appropriate request form." Operating Procedure 720.6(IV)(D). The record clearly shows that Roulhac initiated the majority of his appointments for dental treatment in conformance with Operating Procedure 720.6.[12] Moreover, on November 2, 2009, Dr. Janek specifically instructed Roulhac to wait for his mouth to heal and then submit a request form for dental evaluation. (Janek Aff. ¶ 16.) Nevertheless, despite his familiarity with requests for dental treatment and Dr. Janek's specific instruction, Roulhac never properly requested a dental appointment after November 2, 2009. Given

---

[12] Dr. Janek treated Roulhac on two occasions without first receiving an inmate request form. On one of these occasions, Dr. Janek evaluated Roulhac's wound after Roulhac's return from his second surgery at MCV. (Janek Aff. ¶ 13.) On the other occasion, PCC Medical referred Roulhac to Dr. Janek to remove stiches in Roulhac's mouth. (*Id.* ¶ 14.)

these circumstances, no rational fact finder could conclude that Dr. Janek's actions, i.e., not scheduling Roulhac for denture evaluation in the absence of a request form, were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (4th Cir. 1986)). Accordingly, Dr. Janek's Motion for Summary Judgment will be granted.

## V. OUTSTANDING MOTIONS

On August 17, 2012, Roulhac moved this Court "to Order [PHS], to pay Plaintiff the $500,000. dollars awarded him in the above style case on December 23, 2011, by this Honorable Court." (Mot. Order (Dk. No. 80) 1.) However, this Court's December 23, 2011 Memorandum Opinion and Order did not award damages to Roulhac. Rather, the December 23, 2011 Memorandum Opinion and Order dismissed Roulhac's claims against PHS and terminated PHS as a defendant. *Roulhac v. Prison Health Servs., Inc.*, No. 3:10CV408–HEH, 2011 WL 6750559, at *6 (E.D. Va. Dec. 23, 2011). Accordingly, Roulhac's Motion for Order (Dk. No. 80) will be denied.

On August 27, 2012, Roulhac moved this Court "to Order [Dr. Janek], Dentist to pay Plaintiff the $500,000. dollars awarded him in the above style case on December 23, 2011, by this Honorable Court." (2d Mot. Order (Dk. No. 83) 1.) Because Roulhac's claims against Dr. Janek will be dismissed, the Second Motion for Order (Dk. No. 83) will be denied.

## VI. CONCLUSION

Based on the foregoing analysis, Roulhac's Motion for Order and Second Motion for Order (Dk. Nos. 80, 83) will be denied. Dr. Janek's Motion for Summary Judgment (Dk. No. 74) will be granted and Roulhac's Claim 3(a) will be dismissed with prejudice. An appropriate Order will accompany this Memorandum Opinion.

Date: Oct. 9 2012
Richmond, Virginia

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE